# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **ART FAGEN,** | § | |
| | § | |
| **Plaintiff,** | § | |
| **v.** | § | **CIVIL ACTION NO.** |
| | § | |
| **MICHAEL J. ASTRUE,** | § | **SA-06-CV-1069 OG (NN)** |
| **Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## MEMORANDUM AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   Hon. Orlando Garcia**
**United States District Judge**

## I. Introduction

Plaintiff Art Fagen brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Fagen was not disabled for the purposes of the Social Security Act (the Act) and denying Fagen's application for Disability Income Benefits (DIB).  Fagen asks the district court to reverse the decision and to render judgment in his favor.  In the alternative, Fagen asks the district court to reverse the decision and remand the case for further proceedings.

After considering Fagen's brief in support of his complaint,[1] the brief in support of the Commissioner's decision,[2] Fagen's reply brief,[3] the record of the SSA proceedings, the pleadings

---

[1]Docket entry # 7.

[2]Docket entry # 8.

[3]Docket entry # 9.

on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend remanding this case to the Commissioner so the ALJ can evaluate the opinion by the testifying medical expert that Fagen cannot perform even sedentary work and affirming the Commissioner's decision in all other respects.

I have jurisdiction to enter this memorandum and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's applications for benefits.[4]

## II. **Jurisdiction**

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## III. **Administrative Proceedings**

Based on the record in this case, Fagen fully exhausted his administrative remedies prior to filing this action in federal court.  Fagen applied for DIB benefits on December 10, 2002, alleging disability beginning November 8, 2002.[5]  The Commissioner denied the application initially and on reconsideration.[6]  Fagen then asked for a hearing before an ALJ.[7]  A hearing was held on March 1, 2005.[8]  The ALJ issued a decision on May 26, 2005, concluding that Fagen is

---

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, p. 65.

[6]*Id*. at pp. 32- 34 & 40.

[7]*Id*. at p. 44.

[8]*Id*. at pp. 1063-1109.

not disabled within the meaning of the Social Security Act (the Act).[9]  Fagen asked for review of

the decision on July 14, 2005.[10]  The SSA Appeals Council concluded on October 20, 2006, that

no basis existed for reviewing the ALJ's decision.[11]  The ALJ's decision became the final

decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C.

§ 405(g).  Fagen filed this action seeking review of the Commissioner's decision on December 7,

2006.[12]

## IV.  Issue Presented

> Is the ALJ's decision that Fagen was not under a "disability," as
> defined by the Act, at any time through the date of the decision,
> supported by substantial evidence and does the decision comport
> with relevant legal standards?

## V.  Analysis

### A. Standard of Review

In reviewing the Commissioner's decision denying disability benefits, the reviewing court

is limited to determining whether substantial evidence supports the decision and whether the

Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial

evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[9]*Id*. at p. 15.

[10]*Id*. at p. 14.

[11]*Id*. at p. 7.

[12]Docket entry # 1.

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

3

reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17]  Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18]  Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

### 1. Entitlement to Benefits

---

[14]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16]*Martinez*, 64 F.3d at 173.

[17]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18]*Martinez*, 64 F.3d at 174.

[19]*Id.*

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive disability benefits.[20]   The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21]   A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

### 2. Evaluation Process and Burden of Proof

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[23]   A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in

---

[20]42 U.S.C. § 1382(a)(1) & (2).

[21]42 U.S.C. § 1382c(a)(3)(A).

[22]42 U.S.C. § 1382c(a)(3)(B).

[23]20 C.F.R. §§ 404.1520 and 416.920.

[24]*Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[25]  If so, the claimant will be found not disabled regardless of his

medical condition or his age, education, or work experience.[26]  The second step involves

determining whether the claimant's impairment is severe.[27]  If it is not severe, the claimant is

deemed not disabled.[28]  In the third step, the Commissioner compares the severe impairment with

those on a list of specific impairments.[29]  If it meets or equals a listed impairment, the claimant is

deemed disabled without considering his age, education, or work experience.[30]  If the impairment

is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional

capacity and the demands of his past work.[31]  If the claimant is still able to do his past work, the

claimant is not disabled.[32]  If the claimant cannot perform his past work, the Commissioner

moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities,

age, education, and work experience, to do other work.[33]  If the claimant cannot do other work,

he will be found disabled.  The claimant bears the burden of proof at the first four steps of the

---

[25]20 C.F.R. §§ 404.1520 and 416.920.

[26]*Id.*

[27]*Id.*

[28]*Id.*

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

sequential analysis.[34]  Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[35]  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.[36]

## B. Findings and Conclusions of the ALJ

In this case, the ALJ reached his decision at step 5 of the evaluation process.  At step 1, the ALJ determined that Fagen had not engaged in substantial gainful activity since his alleged onset date.[37]  At step 2, the ALJ determined that Fagen has several medically determinable impairments: hypothyroidism, skin cancers requiring periodic removal, a history of Hodgkin's disease which is in remission, pulmonary fibrosis that has resulted in reduced pulmonary function, sleep apnea, diabetes mellitus, chronic renal insufficiency, dyspnea, and coronary artery disease.[38]  The ALJ characterized three of these impairments—diabetes mellitus with renal insufficiency, pulmonary fibrosis, coronary artery disease—as severe.[39]  Fagen does not quarrel with these characterizations.  At step 3, the ALJ determined that none of Fagen's severe

---

[34]*Leggett*, 67 F.3d at 564.

[35]*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37]SSA record, p. 27.

[38]*Id*. at p. 20-22.

[39]*Id*. at p. 22.

impairments meet or medically equal a listed impairment.[40]  At step 4, the ALJ found that Fagen

can lift and carry up to 10 pounds and walk/stand at least 2 hours and sit up to 8 hours in an 8-

hour day.  At step 5, the ALJ determined that Fagen's medical conditions do not prevent him

from performing his past relevant work which was sedentary work, requiring sitting with little, if

any, lifting.[41]  Thus, the ALJ concluded that Fagen was not disabled for the purposes of the Act.

## C.  Fagen's Allegations of Error

Fagen has an extensive medical record.  There is no question that he has many medical

problems.  But Fagen complains only about the ALJ's treatment of four pieces of evidence: (1)

the cardiac residual functional capacity questionnaire completed by Dr. Sean Spangler,[42] (2) the

medical opinion re: ability to do work-related activities (physical) completed by Dr. Andre

Ognibene,[43] (3) the diabetes mellitus residual functional questionnaire completed by Dr. Maureen

Koops,[44] and (4) testimony by the medical expert, Dr. Alice Cox.  Fagen's arguments apply to

step 4 of the evaluation process because they apply to the ALJ's determination about residual

functional capacity.  Fagen had the burden of proof at that step.  The ALJ's consideration of the

applicable evidence is discussed below.

The cardiac residual functional capacity questionnaire.  Fagen underwent a cardiac

---

[40]*Id.*

[41]*Id*. at p. 26.

[42]*Id*. at pp. 285-9.

[43]*Id*. at pp. 313-6.

[44]*Id*. at pp. 317-21.

catheterization on December 19, 2001.[45]  During a cardiac catheterization, a small catheter is passed into the heart to "obtain a sample of blood, to determine the pressure within the heart, to detect anomalies in the structure of the heart, etc."[46]  Although Fagen's heart condition had been stable since his cardiac catheterization, Fagen's internal medicine provider, Dr. Ognibene, referred Fagen to Dr. Spangler—a cardiologist—for a followup examination.  Dr. Spangler examined Fagen on April 16, 2003.  Dr. Spangler's record for the examination doesn't say much—it reflects little more than his diagnosis of chronic dyspnea most likely related to radiation fibrosis and a note that he discussed his diagnosis with Fagen's pulmonologist.  Dr. Spangler indicated that no reason existed to repeat the previous testing and imaging.  On that same day, Dr. Spangler completed the cardiac residual functional capacity questionnaire that Fagen complains about.  In answer to the question, "To what degree can your patient tolerate work stress," Dr. Spangler answered, "Incapable of even 'low stress' jobs."[47]  In response to a request that he indicate how long Fagen can sit and stand/walk total in an 8-hour day, Dr. Spangler indicated that Fagen can sit for at least 6 hours and stand/walk for less than 2 hours.[48]  Fagen contends that the ALJ committed reversible error by failing to accord Dr. Spangler's opinion considerable weight.

The ALJ must ordinarily give a treating physician's opinion considerable weight in determining whether a person is disabled; however, the ALJ may reject the opinion of a

---

[45]*Id*. at pp. 214-22.

[46]J.E. SCHMIDT, M.D., ATTORNEY DICTIONARY OF MED. C-1556 (Matthew Bender 2005).

[47]SSA record, p. 286.

[48]*Id*. at p. 287.

physician when the evidence supports a contrary conclusion.[49]  The ALJ may assign little or no

weight to a treating physician's opinion when the opinion is conclusory, unsupported by

medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported

by the evidence.[50]  If an ALJ intends to reject or give little weight to a treating specialist's

opinion, the ALJ must consider the following factors before declining to give any weight to the

opinions of the treating specialist: (1) the physician's length of treatment of the claimant, (2)

(2) the physician's frequency of examination, (3) the nature and extent of the treatment

relationship, (4) the support of the physician's opinion afforded by the medical evidence of

record, (5) the consistency of the opinion with the record as a whole, and (6) the specialization of

the treating physician.[51]  If the ALJ fails to consider these factors, the case must be remanded for

consideration of these factors.[52]

The ALJ considered each of these factors before rejecting Dr. Spangler's opinion.  The

following excerpts from the ALJ's opinion shows that he considered the first three

factors—length of treatment, frequency of examination, and the nature and extent of the

treatment relationship:

> Dr. Spangler stated in the questionnaire that he has only seen the claimant for one
> hour and yet he was able to essentially find him unable to perform any type of
> work activity. . . . The fact that Dr. Spangler only saw the claimant once for one
> hour and his opinion is not supported by the medical evidence as a whole result in

---

[49]See Newton v. Apfel, 209 F.3d 448, 455 (5th Cir. 2000).

[50]See Newton, 209 F.3d at 456.

[51]See Newton, 209 F.3d at 456; 20 C.F.R. § 404.1527(d).

[52]See Newton, 209 F.3d at 456.

his opinion not being given any weight.[53]

The ALJ's reference to the one hour Dr. Spangler saw Fagen is a consideration of length of treatment, frequency of examination, and the nature and extent of the treatment relationship.  The following excerpt shows that the ALJ considered the fourth factor—how the medical evidence supports the physician's opinion:

> Dr Spangler states that the claimant has Class 3 heart problems. . . with chest pain. . . . Dr. Spangler stated that the claimant had chest pain, but as previously noted, there is little evidence of any complaints of chest pain.  He does not use nitroglycerin other than a patch, which is for blood pressure control. . . . In fact, at a cardiology follow-up on March 10, 2004, the claimant said that he was doing well and denied chest pain, dizziness, and shortness of breath.  It was also noted at that time that his congestive heart failure was well compensated. . . .[54]

The ALJ's comparison of Dr. Spangler's report of chest pain with the evidence in the record shows the ALJ considered how the medical evidence in the record supports Dr. Spangler's opinion.  The following excerpt shows that the ALJ considered the fifth factor—the consistency of Dr. Spangler's opinion with the record as a whole:

> [Dr. Spangler] said that the claimant could lift up to 10 pounds, but could walk/stand less than 2 hours and sit less than 6 hours in an 8-hour day. . . . Dr. Spangler states that the claimant has Class 3 heart problems. . . . His conclusion that the claimant has Class 3 heart problems is countered by another report that found Class 2 heart problems. . . . The medical expert testified that a person who has class two heart problems could be expected to have to [sic] ability to perform light work (lift up to 20 pounds occasionally and 10 pounds frequently and walk/stand up to 6 hours and sit up to 2 hours in an 8-hour day).[55]

The ALJ's comparison of Dr. Spangler's classification of Fagen's heart problems with a different

---

[53]SSA record, p. 24.

[54]*Id*. at pp. 23-4.

[55]*Id*.

classification of Fagen's heart problems, and of Dr. Spangler's assessment of Fagen's ability to lift, stand, walk and sit with the medical expert's testimony about the abilities of a person with Class 2 heart problems, are considerations about the consistency of Dr. Spangler's opinion with the record as a whole.  The ALJ did not quarrel with Dr. Spangler's qualifications as a cardiologist to advance a medical opinion about Fagen's ability to work.  Because the ALJ considered the required factors, the ALJ made no error of law in rejecting Dr. Spangler's opinion.

The medical opinion re: ability to do work-related activities (physical).  Dr. Ognibene is an internal medicine doctor who served has Fagen's primary care provider since 1999.  In April 2003, Dr. Ognibene completed a medical opinion re: ability to do work-related activities (physical).[56]  In that form, Dr. Ognibene opined that Fagen can sit for 5 minutes before having to change positions, Fagen can't stand, Fagen needs the opportunity to shift at will from sitting or standing/walking, and Fagen needs to lie down every 2-3 hours.  The AlJ rejected these opinions.  Fagen contends that the ALJ committed reversible error by failing to accord these opinions considerable weight.

The ALJ did not commit reversible error by not giving Dr. Ognibene's opinions considerable weight because he considered the required factors before rejecting the opinions about Fagen's ability to work.  The ALJ did not question the length of time that Dr. Ognibene treated Fagen, the frequency of Dr. Ognibene's examination, Dr. Ognibene's specialization, or the nature and extent of his treatment relationship with Fagen.  The ALJ's extensive discussion of Fagen's medical problems shows that he conducted a thorough study of Fagen's medical records and the numerous entries Dr. Ognibene made in Fagen's medical record show that the

---

[56]*Id*. at pp. 313-6.

12

ALJ knew that Dr. Ognibene was qualified to provide opinions about Fagen's ability to work.

Instead, the ALJ rejected Dr. Ognibene's opinions because they are not supported by the medical

evidence.  The following excerpt from the ALJ's opinion shows that the ALJ considered whether

the medical record supported Dr. Ognibene's opinions and whether his opinions were consistent

with the record as a whole:

> There is also in evidence a residual functional capacity questionnaire completed
> by Dr. Andre J. Ognibene that limits the claimant to lifting/carrying less than 10
> pounds and walking/standing less than 2 hours and sitting 2 hours in an 8-hour
> day and further states the claimant needs to lie down ever 2 to 3 hours. . . . No
> objective medical basis is provided for these limitations.  The claimant has never
> complained of problems sitting and there is no medical evidence that he is unable
> to lift or carry at least 10 pounds.  Nowhere in the medical evidence is there any
> allegation by claimant of medical findings that support the need for him to lie
> down every 2 or 3 hours.  This residual functional capacity assessment in [sic] not
> supported by the evidence as whole and is not given any weight.[57]

The ALJ's comparison of Dr. Ognibene's opinions with Fagen's medical records shows that the

ALJ considered the required factors.[58]  The ALJ did not make an error of law in rejecting Dr.

Ognibene's opinions.

   The diabetes mellitus residual functional capacity questionnaire.  Dr. Koops is an

endocrinologist who has treated Fagen for his diabetes mellitus since 1996.  In the diabetes

mellitus residual functional capacity questionnaire, Dr. Koops opined that Fagen can

continuously sit for one hour, continuously stand for 20 minutes, stand/walk less than 2 hours in

an 8-hour working day with normal breaks, sit at least 6 hours in an 8-hour working day with

---

[57]*Id*. at pp. 25-6.

[58]The ALJ discussed the medical evidence that contradicted Dr. Ognibene's opinions in the
paragraph preceding his discussion of Dr. Ognibene's opinions.  *See* SSA record, p. 23.

normal breaks, and frequently lift 10 pounds.[59]  The ALJ did not reject these opinions, but instead questioned Dr. Koops's opinion about Fagen's ability to sit and determined that Dr. Koops's opinions are consistent with the ability to do perform sedentary work.  The following excerpt from the ALJ's opinion shows that the ALJ relied on Dr. Koops's opinions in finding that Fagen has the residual functional capacity to lift and carry up to 10 pounds and walk/stand at least 2 hours and sit up to 8 hours in an 8-hour day:

> A diabetes residual functional capacity questionnaire was completed by Dr. Maureen Koops on April 22, 2003, who had seen the claimant during the past three to six months.  Dr. Koops said that the claimant was able to sit up to 6 hours a day, but no longer than 1 hour at a time; walk/stand less than 2 hours; and lift up to 10 pounds. . . . The claimant stated in a supplemental questionnaire that he has no problems with sitting. . . so it is unclear why Dr. Koop [sic] found him limited to sitting no more that one hour at a time.  Dr. Koops also found that the claimant would need to take unscheduled breaks three to four times a week.  No reason is given for the need for such breaks.  The medical evidence does not show that the claimant's diabetes would impose such limitations, but the undersigned notes that even this residual functional capacity would essentially allow the claimant to perform sedentary work activity.[60]

This excerpt shows that with the exception of Dr. Koops's opinion about Fagen's ability to sit, the ALJ afforded considerable weight to Dr. Koops's opinion.  To the extent the ALJ rejected Dr. Koops's opinion about Fagen's ability to sit, the ALJ considered whether the opinion was supported by the medical evidence and whether the opinion was consistent with the record as a whole, without quarreling over Dr. Koops's specialization, the length of time she had treated Fagen, the frequency of her treatment, or the nature and extent of her relationship with Fagen.  The ALJ did not commit an error of law in his consideration of Dr. Koops's opinions.

---

[59]SSA record, pp. 317-21.

[60]*Id*. at p. 25.

Dr. Cox's testimony.  Fagen's last argument challenges the ALJ's treatment of Dr. Cox's testimony.  Fagen argues that the ALJ failed to analyze Dr. Cox's opinion that Fagen is unable to consistently perform even sedentary work.  The SSA regulations require the ALJ to consider the same six factors used in evaluating the opinions of treating physicians in evaluating the opinions of non-examining physicians like Dr. Cox.[61]  The applicable testimony follows:

| | |
|---|---|
| ALJ: | At L-578 they went over – at the scene test, they went over the stress test, they went over the echo, and they regarded it as a class 2, heart compensated. |
| Dr. Cox: | Right. |
| ALJ: | You would agree with that? |
| Dr. Cox: | Yes, I do. |
| ALJ: | Class 2, heart compensate, if that were the only problem which I recognize it's not.  I hear what you're saying. |
| Dr. Cox: | Uh-huh. |
| ALJ: | Such a person can do – could do sedentary, even light work? |
| Dr. Cox: | Yes. Yes. |
| ALJ: | Wouldn't you agree? |
| Dr. Cox: | Yes. |
| ALJ: | And the specific problem preventing the claimant from doing sedentary work is, is not – it's not one, it's the, it's the – |
| Dr. Cox: | Combination. |

---

[61]*See* 28 C.F.R. §404.1527(f) (requiring use of the same rules when evaluating opinions by non-examining sources as used in evaluating other medical opinions).

15

ALJ:            – the combination of everything.  Okay.  Thank you.[62]

* * *

Attorney:       Right.  But you believe in combination of all his problems, he
                would be unable to do even sedentary work on a consistent basis?

Dr. Cox:        Yes, I believe that.[63]

This ALJ did not address this testimony.

Although the ALJ did not address Dr. Cox's opinion that Fagen was unable to

consistently perform even sedentary work, the Commissioner relies on the ALJ's discussion of

Dr. Cox's other opinions to support the Commissioner's decision.  But that discussion does not

address Dr. Cox's opinion that the combination of Fagen's impairments prevented him from

consistently performing sedentary work.  In the excerpts below, the ALJ considered Dr. Cox's

opinion that the combination of Fagen's medical conditions meets a listed impairment:

> The medical expert initially indicated that the compensation of the claimant's
> impairments equaled a listing, but she never stated which listing.  Furthermore,
> the medical evidence does not support a finding that the claimant's impairments
> are of such severity to equal a listing.  The medical expert cited to Exhibit R562,
> wherein the claimant said he could walk only 40 "years" (undoubtedly "yards"
> and only 10 yards on an incline.  There is no medical evidence to support such a
> restricted ability to walk, and as will be seen below, it is inconsistent even with
> the claimant's own later report. . . . Moreover, the medical expert thought the
> report was from December 2003.  It is from March 2001.  Claimant worked for an
> additional 20 months after that which seems impossible if he had the limitations
> he had stated.  The medical expert also stated that the claimant has so many
> medical appointments that he would be unable to work.  However, at the hearing,
> the claimant stated that he only had about four medical appointments per month.
> At least some of these could probably be scheduled around work hours and
> certainly would not require him to miss a full day of work for each appointment.
> While the opinion of the medical expert has been considered, the evaluation of the
> claimant's severe impairments below will show that these impairments are not

_____

[62]SSA record, pp. 1099-1100.

[63]*Id*. at p. 1101.

16

listings level. . . . The medical expert, who initially stated that the medical evidence showed neuropathy, admitted that there was no objective medical evidence of it.  She said the best evaluation of this is through electrodiagnostic studies, which have not been done.  The claimant has been through extensive medical workups for his impairments and surely if significant neuropathy was suspected he would have been given such testing.[64]

The ALJ's comparison of Dr. Cox's opinion—that the combination of Fagen's impairments meets a listing—with the medical evidence shows that the ALJ carefully considered the required factors in assigning weight to that particular opinion.  The comparison, however, does not address Dr. Cox's opinion that the combination of Fagen's impairments prevents him from performing even sedentary work.  The latter opinion—that the combination of impairments prevents Fagen from doing sedentary work—is a separate and distinct opinion.  The ALJ should have addressed the opinion because it is relevant to the ALJ's ultimate conclusion.  Although the reasons for the omission are not apparent—perhaps the ALJ forgot about it—this case should be remanded so the ALJ can evaluate the opinion using the six factors.

## VI. <u>Recommendation</u>

The ALJ's detailed analysis of the medical evidence in this case, and his careful comparison of the medical opinions with the medical evidence, shows that the ALJ is very familiar with the evidence in this case and that he used the correct legal principles and process. The ALJ, however, failed to address Dr. Cox's opinion that the combination of Fagen's impairments prevents him from doing even sedentary work.  Because that opinion is separate and distinct from Dr. Cox's opinion that the combination of Fagen's impairments meets a listed impairment—an opinion the ALJ addressed—this case should be remanded so the ALJ can apply

---

[64]*Id*. at pp. 22-5.

the same thoughtful analysis to Dr. Cox's opinion that Fagen cannot perform sedentary work. The ALJ's decision should be affirmed in all other respects.

### VII. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this memorandum and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "Filing User" with the Clerk of Court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this memorandum and recommendation must be filed within 10 days after being served with a copy of same, unless this time period is modified by the district court.[65]  **Such party shall file the objections with the Clerk of the Court, and serve the objections on all other parties and the Magistrate Judge.** A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[66]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this memorandum and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

---

[65]28 U.S.C. §636(b)(1); FED. R. CIV. P. 72(b).

[66]*Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root, Inc.*, 200 F.3d 335, 340 (5th Cir. 2000).

factual findings and legal conclusions accepted by the district court.[67]

      **SIGNED** on July 2, 2007.


                                          *Nancy Stein Nowak*
                                          NANCY STEIN NOWAK
                                          UNITED STATES MAGISTRATE JUDGE

---

[67]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

19